UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GLENCAIRN IP HOLDINGS LTD. and GLENCAIRN CRYSTAL STUDIO LTD., | Court File No. |
| Plaintiffs, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SIPDARK, LLC, | |
| Defendant. | |

1.     Plaintiffs Glencairn IP Holdings Ltd. and Glencairn Crystal Studio Ltd. (collectively, "Glencairn"), by their attorneys, for their complaint against Defendant SipDark, LLC, allege as follows:

## INTRODUCTION

2.     Glencairn introduced the iconic GLENCAIRN® Glass, depicted below and often referred to as the "Official Whisky Glass," in 2001 to fill a void in the whisky tasting and drinking glass markets, which Glencairn identified as lacking a dedicated whisky glass.  The registered trade dress of the GLENCAIRN® Glass has come to be associated with first-rate quality glass, glass crafting, and whisky tasting.



3.      Defendant SipDark is manufacturing and offering for sale a whiskey glass that imitates the GLENCAIRN® Glass and infringes on and misappropriates Glencairn's trademark rights in the iconic GLENCAIRN® Glass.  Defendant advertises Defendant's whiskey glass on Defendant's Kickstarter project page using the image shown below.



*Updated Glass*

4.      Defendant SipDark is also advertising SipDark's whisky glass using an image of a whiskey glass that is identical to the GLENCAIRN® Glass (reproduced below).  SipDark's

original promotional video on its Kickstarter Project Page demonstrates SipDark's meticulous efforts – a craftsman with calipers – to ensure that the SipDark glass in the photo is an exact replica of the GLENCAIRN® Glass. The exact replica of the Glencairn Glass is prominently displayed as the first advertisement consumers see when they visit SipDark's Kickstarter project page, the website SipDark is using to sell the infringing product.



5.      Defendant is blatantly trading off of the goodwill associated with Glencairn's trade dress and the GLENCAIRN® Glass by offering for sale Defendant's infringing imitation of the GLENCAIRN® Glass in a manner that is likely to cause consumer confusion and deceive the public regarding the source, sponsorship, or affiliation of the infringing glass with Glencairn.

6.      Glencairn seeks to stop Defendant's misconduct and to prevent Defendant from engaging in any further misconduct.  This is an action at law and in equity for damages and injunctive relief based on Federal Trade Dress Infringement, Federal Unfair Competition, Common Law Trade Dress Infringement, Statutory Anti-Dilution, Statutory Deceptive Trade Practices, and Statutory False Advertising.  Among other relief, Glencairn asks this Court to: (i) preliminarily and permanently enjoin Defendant from manufacturing, selling, or offering for sale

the infringing imitation glass; (ii) award Glencairn monetary damages; (iii) require Defendant to disgorge all of its profits from its sales of the infringing glass; and (iv) award Glencairn enhanced damages, attorneys' fees, and costs.

## THE PARTIES

7.    Glencairn IP Holdings Limited is a foreign private limited company organized and existing under the laws of the United Kingdom, having its office and principal place of business at 1-11 Langlands Avenue, East Kilbride, Scotland, G75 0YG.

8.    Glencairn Crystal Studio Limited is a foreign private limited company organized and existing under the laws of the United Kingdom, having its office and principal place of business at 1-11 Langlands Avenue, East Kilbride, Scotland, G75 0YG.

9.    SipDark, LLC is a limited liability company organized and existing under the laws of the state of Minnesota, with its principal place of business at 1085 Rosemary Court, Chaska, Minnesota 55318.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over Glencairn's claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

11.    This Court has personal jurisdiction over the Defendant at least because, on information and belief, Defendant transacts business within the State of Minnesota, including by marketing, selling, and shipping the product giving rise to Glencairn's causes of action to purchasers located in Minnesota, and has purposely availed itself of the privileges of conducting activities within the State of Minnesota.

12.     Venue is proper in this district because Defendant resides in this judicial district for purposes of 28 U.S.C. § 1391(b)(2) because the product giving rise to Glencairn's causes of action has been sold within Minnesota.

## FACTUAL ALLEGATIONS

### A.     Glencairn's Trademark Rights

13.     The GLENCAIRN® Glass is an iconic glass introduced to the market in 2001.

14.     Glencairn IP Holdings Ltd. is the owner of trademark rights in the distinctive trade dress of the GLENCAIRN® Glass (the "GLENCAIRN® Trade Dress"), including a Federal Trademark Registration, United States Registration No. 5,024,360 (the "'360 Registration"), issued by the United States Patent and Trademark Office on August 23, 2016, for the GLENCAIRN® Trade Dress, as depicted below, for "Beverage glassware, namely, whisky glasses."



Glencairn Crystal Studio Limited is the exclusive licensee of those trademark rights.  A copy of the Certificate of Registration for the '360 Registration is attached as Exhibit 1.

15.     Glencairn has distributed and sold the GLENCAIRN® Glass, which features the GLENCAIRN® Trade Dress, since as early as 2001, and in commerce in the United States since

at least September 1, 2004.  As a result of Glencairn's substantially exclusive and continuous use of the GLENCAIRN® Trade Dress and Glencairn's marketing and advertising efforts, Glencairn has acquired goodwill in connection with the GLENCAIRN® Glass, and the GLENCAIRN® Trade Dress has acquired distinctiveness.  The GLENCAIRN® Trade Dress is nonfunctional, and the public recognizes and understands that the GLENCAIRN® Trade Dress distinguishes and identifies the GLENCAIRN® Glass from other products.

16.     The glass in which liquor is served plays a significant role in building the cultural and social experience associated with that liquor.  Whisky, especially single malt scotch whisky, did not have its own dedicated glass for centuries.  Whisky master blenders used a copita glass for nosing and tasting whisky, but this glass was also used for nosing other liquors as well.  In fact, the copita glass was also called a "dock glass" because it was used by buyers to nose and taste wine and spirit shipments at the dock before they accepted the shipment.

17.     Over thirty years ago, Glencairn founder Raymond Davidson  recognized the opportunity to introduce a distinctive glass that would be associated with drinking whisky.  Mr. Davidson took great care in designing his glass to meet the needs of whisky drinking, including the tapered mouth for nosing, while also having a design that was distinctive and attractive to consumers.  The result was the GLENCAIRN® Glass—a glass like no other before it.

18.     In 2001, Glencairn launched the GLENCAIRN® Glass into the market with a 1,500-unit production that was released at the Whisky Live event in London.  With this launch the GLENCAIRN® Glass was born to the world.

19.     Glencairn invested heavily in marketing their distinctive and innovative design. Glencairn supplied GLENCAIRN® Glasses to whisky events and tastings across the globe, including in cities such as New York City, San Francisco, Chicago, Los Angeles, Boston,

Louisville, Portland, and Seattle.  Many of these events have thousands of attendees each year and use the GLENCAIRN® Glass exclusively.  Glencairn also has supplied the GLENCAIRN® Glass to distilleries in the United States that are well known and highly regarded for whisky production, including, for instance, Brown Forman, Jim Beam, and Tuthilltown.  These distilleries hold mini shows and regular tastings of varying sizes using the GLENCAIRN® Glass.

20.     Glencairn has secured industry exposure for the GLENCAIRN® Glass through publications as well.  For example, the GLENCAIRN® Glass has appeared in Whisky Magazine on several occasions and was featured in Malt Advocate magazine in 2002.  The GLENCAIRN® Glass was also advertised for sale in Playboy Magazine in the United States and appeared in the Whiskies of the World official event program in San Francisco in 2003.

21.     The GLENCAIRN® Glass has won several awards and accolades, including The Queen's Award for Enterprise: Innovation in 2006; The Queen's Award for Enterprise: International Trade in 2012; the Scottish Marketing Award for Innovation in 2008; the National Business Award for Innovation and Marketing Excellence Award for Best Marketing Strategy; and the 17th Annual Malt Advocate Whisky Awards "Industry Leader of the Year."

22.     The money and effort Glencairn has spent marketing the GLENCAIRN® Glass has returned financial success as well.  Since launching the GLENCAIRN® Glass with the 1,500-unit production in 2001, Glencairn's sales of the GLENCAIRN® Glass have reached over 20 million glasses globally, with annual sales to the United States of approximately one million glasses.

**B.     Defendant's Wrongful and Infringing Conduct**

23.     Defendant manufactures, advertises, sells, and otherwise uses in commerce a glass under the name American Oak Whiskey Glass (the "SipDark Glass").  The SipDark Glass is a copy and colorable imitation of the GLENCAIRN® Glass—and GLENCAIRN® Trade Dress— and is causing consumer confusion as to the nature and source or origin of the SipDark Glass.  A

side-by-side comparison of the infringing SipDark Glass and Packaging, the GLENCAIRN®
Glass, and the drawing of the GLENCAIRN® Trade Dress from the '360 Registration is included
below.



SipDark Glass          GLENCAIRN® Glass     GLENCAIRN® Trade Dress

24.     Defendant was familiar with the GLENCAIRN® Glass and GLENCAIRN® Trade
Dress when Defendant created, manufactured, and began advertising and selling the infringing
SipDark Glass.  Indeed, SipDark is a customer of Glencairn who re-sells the GLENCAIRN® Glass
on its whisky-themed website.  SipDark has thus profited from the commercial success and global
recognition of the authentic GLENCAIRN® Glass and GLENCAIRN® Trade Dress.

25.     In its initial promotional advertising video on its Kickstarter project page, SipDark
demonstrates how it took painstaking efforts to ensure that the SipDark Glass was an exact replica
of the GLENCAIRN® Glass.  The video featured the glasses side-by-side and showed SipDark
seemingly measuring its glass against the GLENCAIRN® Glass to ensure it was an exact design.
The GLENCAIRN® Glass appeared at least eight times during the 1:30-long video.  Moreover,
the promotional video appeared to imply that the SipDark Glass is of a higher quality than the

GLENCAIRN® Glass, stating, "we found [the GLENCAIRN® Glass] just a bit too delicate for some situations."

26.    SipDark has since made minor modifications of the dimensions of the SipDark Glass while retaining the general shape and feel of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.  As SipDark itself acknowledged to its customers, the design change "is very slight." Customers immediately began complaining about the design change in the comments on the project page, expressly noting that the former glass appeared to be the GLENCAIRN® Glass. Many customers  even expressed their desire to back-out of the campaign, stating that the "original design is what brought people in."

27.    SipDark continues to trade off of the protected design of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.  Both the GLENCAIRN® Glass and the previous design of the SipDark Glass that replicates the GLENCAIRN® Trade Dress are featured in a revised video promoting the SipDark glass.  The  GLENCAIRN® Glass still appears in the background of the video at least once.  And the GLENCAIRN® Glass still appears throughout the video in the form of the previous design of the SipDark Glass.  SipDark has retained at least six prominent images of that glass—which bears the GLENCAIRN® Trade Dress—in its promotion of the new design of the SipDark Glass on SipDark's Kickstarter project page.  SipDark's continued use of these images and labeling of these images as of an "early prototype" make clear SipDark's intention to garner customers' continued support of the SipDark Glass under the mistaken belief they are obtaining a glass embodying the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.  Images displaying these advertisements on the Kickstarter project page are included below:



*Image is of an early prototype*



*Image is of an early prototype*

28.     Consumer confusion is all the more likely given SipDark's continued use of an image in the shape of the GLENCAIRN® Glass and the GLENCAIRN® Trade Dress in its logo on SipDark's Purchase Orders.



29.     Defendant has exploited and is exploiting the commercial success and global recognition of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress to Defendant's commercial advantage.  Defendant copied the GLENCAIRN® Glass and GLENCAIRN® Trade

Dress and misappropriated Glencairn's investment, goodwill, and market share by selling the infringing SipDark Glass at an inferior quality and lower price to would-be consumers of the GLENCAIRN® Glass.  Indeed, consumer forums, industry article and purchaser reviews have referred to the SipDark Glass as "extremely similar to a Glencairn glass" and a "wooden Glencairn styled glass.

30.     The infringing SipDark Glass competes with the GLENCAIRN® Glass and is sold through overlapping channels of trade, including through online marketplaces.  SipDark sells the authentic GLENCAIRN® Glass on its website, making it possible for consumers to purchase both the authentic GLENCAIRN® Glass from Defendant as well as the infringing SipDark Glass.

31.     Defendant's use of a confusingly similar imitation of the GLENCAIRN® Trade Dress is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the whisky glass sold by Defendant is manufactured or authorized by, or in some manner associated with Glencairn.  The SipDark Glass is not manufactured by Glencairn, and neither Defendant nor the SipDark Glass is associated, affiliated, or connected with Glencairn, or licensed, authorized, sponsored, endorsed, or approved by Glencairn in any way.

32.     This deception, confusion, and misleading conduct is particularly damaging with respect to consumers who perceive a defect or lack of quality in the SipDark Glass.

33.     Defendant continues to manufacture, advertise, sell, and otherwise use in commerce its confusingly similar imitation of the GLENCAIRN® Trade Dress in connection with the sale of a product that directly competes with the GLENCAIRN® Glass.  Defendant began selling its imitation after Glencairn had established protectable rights in the GLENCAIRN® Trade Dress.

34.     Defendant's activities and misconduct have caused and are causing irreparable harm to the goodwill symbolized by the GLENCAIRN® Trade Dress and the reputation for quality that the GLENCAIRN® Trade Dress embodies.

35.     Defendant's activities and misconduct have been knowing, intentional, and willful. Defendant has continued to offer its infringing SipDark Glass even after Glencairn brought its trademark rights and the '360 Registration to Defendant's attention.  Defendant has thus acted in bad faith, with malicious intent, and in knowing disregard of Glencairn's rights.

## FIRST CLAIM FOR RELIEF

## FEDERAL TRADE DRESS INFRINGEMENT

### (Lanham Act § 32, 15 U.S.C. § 1114)

36.     Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 35 above.

37.     Glencairn owns United States Trademark Registration Number 5,024,360 for the GLENCAIRN® Trade Dress.  Glencairn has used the GLENCAIRN® Trade Dress in commerce in the United States since at least September 1, 2004.

38.     Defendant's unauthorized use of a confusingly similar imitation of the GLENCAIRN® Trade Dress is likely to cause confusion, mistake, and deception by creating the false and misleading impression that the SipDark Glass is manufactured or distributed by Glencairn, is associated or connected with Glencairn, or has the sponsorship, endorsement, or approval of Glencairn.

39.     The aforesaid conduct constitutes trade dress infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Defendant's conduct demonstrates a willful violation of Glencairn's rights and an intent to trade on the goodwill associated with the GLENCAIRN® Trade Dress.

41.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

42.     Pursuant to 15 U.S.C. § 1117(a), Glencairn is also entitled to recover (i) Defendant's profits, (ii) Glencairn's ascertainable damages, and (iii) Glencairn's costs of suit. Furthermore, Defendant's willful infringement of the GLENCAIRN® Trade Dress without excuse or justification renders this an exceptional case and entitles Glencairn to its reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**

**FEDERAL UNFAIR COMPETITION**

**(Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

43.     Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 42 above.

44.     Glencairn has used the GLENCAIRN® Glass and GLENCAIRN® Trade Dress in commerce in the United States since at least September 1, 2004.  The relevant consuming market of the United States widely recognizes the distinctive GLENCAIRN® Glass and GLENCAIRN® Trade Dress as a designation of source.

45.     Through the use of a confusingly similar imitation of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress, Defendant is knowingly and intentionally misrepresenting and falsely designating to the general public the origin, sponsorship, and approval of the SipDark Glass and the affiliation, connection, and association of Defendant with Glencairn, so as to create a

likelihood of confusion among the public as to the origin, sponsorship, and approval of the SipDark Glass and the affiliation, connection, and association of Defendant with Glencairn.

46.     The aforesaid conduct constitutes false endorsement, false designation of origin, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

47.     Defendant's conduct demonstrates a willful violation of Glencairn's rights and an intent to trade on the goodwill associated with the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.

48.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

49.     Pursuant to 15 U.S.C. § 1117(a), Glencairn is also entitled to recover (i) Defendant's profits, (ii) Glencairn's ascertainable damages, and (iii) Glencairn's costs of suit. Furthermore, Defendant's willful infringement of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress without excuse or justification renders this an exceptional case and entitles Glencairn to its reasonable attorney fees.

### THIRD CLAIM FOR RELIEF

### COMMON LAW TRADE DRESS INFRINGEMENT

50.     Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 49 above.

51.     Glencairn has used the GLENCAIRN® Glass and GLENCAIRN® Trade Dress in commerce in the United States since at least September 1, 2004.  The relevant consuming market

of the United States widely recognizes the distinctive GLENCAIRN® Glass and GLENCAIRN® Trade Dress as a designation of source.

52.     Defendant's unauthorized use of a confusingly similar imitation of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress is likely to cause confusion, mistake, and deception by creating the false and misleading impression that the SipDark Glass is manufactured or distributed by Glencairn, is associated or connected with Glencairn, or has the sponsorship, endorsement, or approval of Glencairn.

53.     The aforesaid conduct constitutes trade dress infringement under Minnesota common law.

54.     Defendant's conduct demonstrates a willful violation of Glencairn's rights and an intent to trade on the goodwill associated with the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.

55.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief.

56.     Glencairn is also entitled to recover, at a minimum, (i) Defendant's profits and (ii) Glencairn's ascertainable damages.  In light of Defendant's willful infringement of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress without excuse or justification, Glencairn is additionally entitled to punitive damages and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

## STATE TRADE DRESS DILUTION

### (Minn. Stat. Ann. §333.285)

57.    Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 56 above.

58.    Glencairn owns United States Trademark Registration Number 5,024,360 for the GLENCAIRN® Trade Dress and has used the GLENCAIRN® Trade Dress in commerce in the United States since at least September 1, 2004.  The relevant consuming market of the United States widely recognizes the distinctive GLENCAIRN® Trade Dress as a designation of source. Indeed, Glencairn's federal registration, the length of acquired distinctiveness, the duration and extent of the GLENCAIRN® Trade Dress, the money expended on advertising, the recognition and accolades, the degree of public recognition in Minnesota, and other factors are sufficient to establish that the GLENCAIRN® Glass and GLENCAIRN® Trade Dress are famous.

59.    Defendant's unauthorized use of a substantially similar imitation of the GLENCAIRN® Trade Dress is likely to erode the public's exclusive identification of the distinctive GLENCAIRN® Trade Dress with Glencairn and otherwise lessen the capacity of the GLENCAIRN® Trade Dress to identify and distinguish Glencairn's goods and services.

60.    Defendant's unauthorized use of a substantially similar imitation of the GLENCAIRN® Trade Dress for the inferior SipDark Glass also is likely to tarnish and degrade consumers' positive quality associations with the GLENCAIRN® Trade Dress.

61.    The aforesaid conduct constitutes trade dress dilution in violation of Minnesota Statute Section 333.285.

62.    Defendant's conduct demonstrates a willful violation of Glencairn's rights and an intent to trade on the goodwill associated with the GLENCAIRN® Trade Dress.

63.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief.

64.     In light of Defendant's willful dilution of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress without excuse or justification, Glencairn is additionally entitled to (i) Defendant's profits, (ii) Glencairn's ascertainable damages, (iii) punitive damages, and (iv) reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

## STATE DECEPTIVE TRADE PRACTICES

### (Minn. Stat. Ann. §§325D.44, 325D.45)

65.     Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 64 above.

66.     Glencairn has used the GLENCAIRN® Glass and GLENCAIRN® Trade Dress in commerce in the United States since at least September 1, 2004.  The relevant consuming market of the United States widely recognizes the distinctive GLENCAIRN® Glass and GLENCAIRN® Trade Dress as a designation of source.

67.     Through the use of a confusingly similar imitation of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress, Defendant is knowingly and intentionally misrepresenting and falsely designating to the general public the origin, sponsorship, and approval of the SipDark Glass and the affiliation, connection, and association of Defendant with Glencairn, so as to create a likelihood of confusion among the public as to the origin, sponsorship, and approval of the SipDark Glass and the affiliation, connection, and association of Defendant with Glencairn.

68.     The aforesaid conduct constitutes deceptive trade practices in violation of Minnesota Statute §§ 325D.44-45.

69.     Defendant's conduct demonstrates a willful violation of Glencairn's rights and an intent to trade on the goodwill associated with the GLENCAIRN® Glass and GLENCAIRN® Trade Dress.

70.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to Minn. Stat. §325D.45.

71.     Pursuant to Minn. Stat. §325D.45 Glencairn is also entitled to recover the costs of suit.  Furthermore, Defendant's willful engagement in deceptive trade practices regarding the GLENCAIRN® Glass and GLENCAIRN® Trade Dress entitles Glencairn to its reasonable attorney fees.

**SIXTH CLAIM FOR RELIEF**

**STATE FALSE ADVERTISING**

**(Minn. Stat. Ann. §§8.31, 325F.67)**

72.     Glencairn repeats and incorporates by reference the allegations set forth in paragraphs 1 through 71 above.

73.     Through the use of a confusingly similar imitation of the GLENCAIRN® Glass and GLENCAIRN® Trade Dress, SipDark is knowingly and intentionally making false, misleading, and deceptive representations of fact in its advertising campaign for the SipDark Glass. In its original promotional video advertising its product on its Kickstarter project page, SipDark showed painstaking efforts to ensure that the SipDark glass is an exact replica of the

GLENCAIRN® Glass.  SipDark has used the GLENCAIRN® Glass and GLENCAIRN® Trade Dress in photos and videos as part of SipDark's advertising campaign to sell the SipDark Glass.

74.     The aforesaid conduct constitutes deceptive trade practices in violation of Minnesota Statute § 325F.67.

75.     Defendant's conduct has caused and, unless enjoined by this court, will continue to cause Glencairn irreparable injury.  This injury includes a reduction in the distinctiveness of the GLENCAIRN® Trade Dress and injury to Glencairn's reputation that cannot be remedied through damages.  Glencairn has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to Minn. Stat. § 8.31.

76.     Pursuant to Minn. Stat. §8.31., Glencairn is also entitled to recover (i) Glencairn's attorneys' fees and (iii) Glencairn's costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Glencairn respectfully requests that this Court:

77.     Preliminarily and permanently enjoin Defendant, its agents, servants, officers, directors, employees, representatives, successors, and assigns, and all others acting in concert or participation with Defendant, from manufacturing, selling, or offering for sale the SipDark Glass or any colorable imitation or variation that is confusingly or substantially similar to the GLENCAIRN® Glass and GLENCAIRN® Trade Dress;

78.     Preliminarily and permanently enjoin Defendant, its agents, servants, officers, directors, employees, representatives, successors, and assigns, and all others acting in concert or participation with Defendant, from using the GLENCAIRN® Glass and GLENCAIRN® Trade Dress in its promotions and advertisements.

79.     Award Glencairn its ascertainable damages, costs, and attorneys' fees;

80.     Award Glencairn Defendant's profits attributable to the SipDark Glass;

81.    Award Glencairn punitive damages;

82.    Grant such other and further relief to Glencairn as the Court deems just and appropriate under the circumstances.

### DEMAND FOR A JURY TRIAL

83.    Glencairn demands a jury trial on all issues so triable.

Dated:  February 5, 2018                    O'MELVENY & MYERS LLP


By:/s/ *Anthony G. Beasley*
    Anthony G. Beasley, License No. 389070
    tbeasley@omm.com
400 South Hope Street
18th Floor
Los Angeles, California  90071-2899
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407


    Mark E. Miller (*pro hac vice pending*)
    California License No. 130200
    markmiller@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3823
Telephone:    +1 415 984 8700
Facsimile:    +1 415 984 8701

Attorneys for Plaintiffs
GLENCAIRN IP HOLDINGS LTD. and
GLENCAIRN CRYSTAL STUDIO LTD.